HOUSER & HOUSER *v.* THE LITHGOW MANUFACTURING Co

The charge of the court appears to be free from error ; but were it otherwise, a new trial would not be required, because the verdict was demanded by the evidence.

SIMMONS, J., not presiding, because of sickness.

January 31, 1890.

Charge of court. New trial. Verdict. Before Judge GUSTIN. Houston superior court. April term, 1889.

The Lithgow Manufacturing Company brought to Houston county court its action of complaint against Ed. J. Houser and Jeff. D. Houser, late partners under the name of Houser & Houser, as acceptors of a draft for $282.50, drawn by Kennedy Bros. in favor of plaintiff, dated November 9, 1882, and due thirty days later; and recovered judgment there July 21, 1884. An appeal to the superior court was taken, and there, on October 6, 1884, was pleaded (1) the general issue; (2) failure of consideration, for that the plaintiff, through its agent, sold the defendants a lot of cotton-ties under a guarantee that they were as good as the Arrow tie, and not pieced, and defendants bought them on this guarantee, paying $282.50 cash and accepting the draft sued on; but after examining the ties, defendants found

them to be inferior and not nearly so good as guaranteed; and the cash amount paid was fully their value under the contract, and defendants should be discharged from payment of the draft. The third plea was stricken; and the fourth was, that when defendants contracted for the ties, the plaintiff contracted to sell the ties which had been shipped the year before and stored in defendants' warehouse, without charging freight; but they did add freight to the amount of $86 into the draft, which fact defendants did not find out until after the draft had been returned; and there should be a credit of that amount thereon, even if the ties had proved as guaranteed.

On October 5, 1886, Mrs. Mary L. Houser, as administratrix of E. J. Houser, having been made a party, pleaded, by amendment, *plene administravit*, a sum not sufficient to satisfy debts of a higher nature against the estate being all in her hands or likely to be so. On the trial, after the introduction of the draft, O. M. Houser, bookkeeper for Houser & Houser in 1882, Hollinshead, who was with that firm when the ties in question came to them (September, 1881), and J. D. Houser, one of that firm, testified, in brief, as follows: The ties were what is known as pieced ties, worth less than half (the bookkeeper said about two thirds) as much as first-class ties. More than half of them were returned because broken. A few were sold in the season of 1881, but they came too late to sell many. Some of them were returned by the buyers; the farmers returned a large quantity. The entire lot lay in the warehouse where they could be seen every day, and they were seen by defendants. One could see at a glance that they were pieced ties, and not first-class whole ties. None of them were suited to the purpose for which they were intended on account of being too rotten. Both members of the firm of Houser & Houser knew all these circum-

stances in the fall of 1881. E. J. Houser purchased the ties; J. D. Houser did not hear the contract, and did not specially examine the ties; knew nothing of the contract of purchase. He testified that the first draft, for the same amount as the one sued on, was paid; and that the ties they sold in the fall of 1881 were on account of plaintiffs,—the firm bought the rest the fall thereafter. The plaintiffs introduced seven letters addressed to Kennedy Bros., all signed Houser & Houser, save the last which is signed " E. J. Houser formerly of H. & H." They are dated October 31, 1881; August 15; September 14, November 20 and 29, 1882; and January 9 and July 29, 1883. The first encloses a bill for $76.71 for freight and drayage on a car-load of ties, and says, " We saw yr. Mr. Cook on last Friday, and he authorized us to take the ties in store and sell for yr. a/c. We have done so, and think we can sell a good many of them before the season is over; and would have been glad to have had the order some time ago, as we would have by this time retailed a good many of them out. We draw this day for above [bill enclosed], and as per agreement Mr. C. will be here often, and will pay him over all money for ties sold." The second letter states: " We wrote you some ten days ago concerning the carload of ties, and have heard nothing from you. We propose to take them at Mr. Cook's price, 1.45, payable one half on 1st November and remainder on 1st December. Please let us hear from you at once, as we must purchase somewhere immediately." The third letter says: " Enclosed find statement with our notes for carload of ties; we bought the ties as stated in your list, at 150 pounds @ 1.45, 250 @ 1.50, from Mr. Cook here, and not in Savannah. The drayage and storage are actual expenses paid by us." The fourth letter states: " Please return our warehouse receipt, given you for 400 bundles of ties. We have accepted your bill, and

want the receipt by the time your dft. on us is due."
The fifth is: " Your of 22 inst. recvd. We think best
for us that you have a witness to the affidavit you sent
instead of receipt. We enclose it to you, and hope you
will have it witnessed and returned, if you have not
found the receipt before this." The sixth is: "We
wrote you some time since to have warehouse receipt
for 400 bdls. ties ford. or its equivalent, and have not
received it. Please give this your prompt attention."
The remaining letter, from E. J. Houser individually,
after stating that he has been in Florida some months
for his health, on account of the bad condition of which,
his mind also being affected, he had to give up all busi-
ness in the previous winter, says:

"I find yrs. of the 10th, and hardly know what to say, as I have
not the money to pay the amount, and the assets of the firm are not
available now, as they consist of notes and accounts which cannot be
collected before a crop is made. There is double enough to pay all
there is owing; and I hope to be able to pay all there is owing by
next winter and fall. My connection in the firm of Houser & Houser
has well-nigh ruined me, and I write you in all candor and confidence.
My partner had no money interest in the business, and all to make
and nothing to lose, so spent all he could ; and my being sick and not
able to be on hand, everything went to the mischief, and I had to
take my own individual money and pay any number of debts made,
and he not able to help me pay them. I soon was exhausted myself,
and I find that the concern is badly in debt and I have got it all to
pay, and my partner not able to help one dollar. I have had to mort-
gage what property I have for the several thousand dollars of bor-
rowed money due the bank and some other parties here. They say
they will give me time to work out, and will not injure me by suing
or foreclosing; and I am plain to say to you that there is no chance
now for me to settle. If you will just wait, I feel confident that I
will be able to pay all or a greater portion at least; and whatever bal-
ance there is comes out of my pocket. I simply want your indul-
gence, and I ask that you think how unfortunate I am in this thing;
if you give me the time, I will pay it all, and if you were to sue me,
you would destroy my chances of making the money and in fact ruin
me entirely. The concern owes me some (6) six thousand dollars ad-
vanced, and I will never get one cent. Write direct to me, as I had
the firm dissolved last winter, and have the assets in my possession."

A witness introduced by the defence testified that

.E. J. Houser was greatly afflicted the last few years of his
life; that in 1883 his mind was greatly impaired, and
he was not competent to attend to any business on that
account; that he was not, the witness thought, in such
condition at the time he wrote the letter just set forth
as to know how to attend to business by writing or
otherwise; and that he was a good business man, and
was successful until he got afflicted with rheumatism
and got into the opium habit, after which he lost con-
tinually.   The defence introduced the following from
the interrogatories of A. L. Kennedy, who sold the ties
.and was witness for plaintiff: The ties were made out
of the best material.   I have never sold a pieced tie.
The ties were sold and shipped to defendants in 1881,
but on account of their not arriving in time as by con-
tract, the defendants held them subject to my orders·
The ties were guaranteed in every respect.   I did not
see them made; bought them in person through a Liver-
pool firm, whose duty it was, if they wanted pay for
them, to see that they were painted and up to specifica-
tions.   I never saw the ties.

The verdict was, for the plaintiff $282.50, with inter-
est from maturity.   A new trial was moved for, on the
following grounds :

(1) Error in not charging on the issue made by the
fourth plea, and on the plea filed by Mrs. Houser, as ad-
ministratrix.

(2–5) Verdict contrary to law and evidence.

(6) Error in charging: "If you should find from the
evidence that the goods in question had been put in the
house of Houser & Houser and had remained there in
their possession for any considerable length of time, and
they had full opportunity of ascertaining and had ascer-
tained their condition by handling them, by having
made sales of them, or in any other manner, and that
then, with that knowledge and with reference to their

v 84-22

then condition, they made a purchase of those goods and had agreed upon a price with reference to their then condition, the defendants', Houser & Houser's, defence would not be available; if the parties contracted for the goods of inferior quality, agreeing to pay a reduced price, that would be their contract, and they couldn't set up this failure of consideration or failure to comply with the warranty; and that is really, gentlemen, the principal question for you to determine in this case, as to whether these drafts were given under the original contract, or whether they were given under a contract made at a different time."

The motion was overruled, and defendants excepted.

M. G. BAYNE and W. C. WINSLOW, for plaintiffs in error.

A. C. RILEY and C. C. DUNCAN, *contra.*

BLANDFORD, Justice.

The plaintiffs in error allege that the court below committed error in its instructions to the jury. We have looked at the charge, and while we do not think the judge below committed any error therein, yet if he had, it would not work a reversal of this case, inasmuch as the verdict was demanded by the evidence and was right under the law and the facts of the case.

*Judgment affirmed.*